time barred for two reasons. One of them is that he did not present in a timely manner the challenge to his 1995 unconstitutional conviction in Pierce County. And as we have argued in our briefing, the Lackawanna Court decision is one that makes the respondents argument hold no weight. And that is because Mr. Bartley was sentenced on his third strike to life without possibility of release solely because of that second strike, which is an unconstitutional conviction for Mr. Bartley. The Lackawanna Court allows him to raise that at this point in time. Where in the Lackawanna Court the decision does it say that? It seems to me that it says that you cannot go into a conviction like this under these circumstances unless there was a complete denial of counsel under Gideon v. Wainwright. It seems to shut the door on exactly what you're trying to do. Your Honor, the Lackawanna, the facts and the complete discussion with respect to the Lackawanna decision I believe distinguishes what's going on here. And in part that is because in the Lackawanna Court, what the Lackawanna decision, what the Petitioner was doing in that case was he was challenging the prior conviction when the prior convictions weren't the sole factor that enhanced that subsequent sentence. But that seems to be a difference without a distinction in terms of putting finality to these things. This is no reflection on you, of course, but your client should have to address this conviction. So there's got to be some finality to it. And the cases seem to say unless you can show some kind of miscarriage of justice, actual innocence, complete deprivation of counsel, it's over. Well, Your Honor, I would respectfully disagree with the Court. First of all, the actual innocence is not the only standard that the Courts use with respect to miscarriage of justice. And in this case — Excuse me for interrupting you, but I've also looked at your claim, and I don't think your claim even holds any water in terms of miscarriage of justice. Looking at the transcript of what the judge told your client when he pleaded, it seems pretty clear to me that he was taking his chances of what he was going to get. There were no promises made. He may have had an expectation, but there was no enforceable promise by the judge. Actually, Your Honor, if the Court directs its attention to Ms. Mosteller's declarations that she's given, she's had considerable experience — had had considerable experience at that point in time before Judge Steiner, the Pierce County judge. And at that time, she knew — in fact, she uses the word she had no doubt — that as soon as she went back to Judge Steiner with a bed date for Mr. Bartley, that he would then change the judgment and sentence. And what he would do is he would order that he have jail time instead — I'm sorry, have inpatient drug treatment instead of his jail time. And the chronology of events is such that Ms. Mosteller, in April of 95, submitted a task referral so that it could — so that the ball could start rolling to determine whether or not Mr. Bartley was actually going to be eligible for that inpatient treatment. And the process made its way through all the way until June of 95, two months later almost to the date, at which time it was discovered to everyone's surprise, the prosecutor, Ms. Mosteller, and even Mr. Mack, who did the evaluation, that this no longer was available. This was the first time that Ms. Mosteller was made aware that treatment instead of jail time was no longer available, not only to Ms. Mosteller, but from then on to no one else. So Mr. Bartley counseled with her with the understanding that treatment was available. And I think also the colloquy between Mr. Bartley and Judge Steiner was such that it was very clear that Mr. Bartley wanted drug treatment. He knew that his — There was a recommendation to the prosecutor in the third page, paragraph E, the judge need not follow that, can sentence you to the maximum. Do you understand that, says the judge, the defendant says, yes, I do, and this is your second strike. Has that been explained to you? Yes. And yet in the judgment and sentence the judge wrote in that when they came back to him with the information about the treatment and that he was going to be eligible for the treatment and that he would receive a bed date, that he would then consider that. And that speaks to Ms. — that then goes to Ms. Mosteller's declaration. This is what the judge said. The judge didn't say, and maybe it's expected that he wouldn't say that, sure, I'm going to give you drug treatment as long as you qualify. What did she do after that with respect to raising the issue? Nothing. And she is — She was so confident. I mean, that seems to undercut the strength of her current declaration, doesn't it? Well, maybe I'm not understanding the Court's question. Are you asking as far as what she did after the time that they discovered that the treatment was not available? She did nothing. Do you think, contemporaneously, if it was everybody's understanding it would be drug treatment, that something would have happened right on the spot? And here we are years later trying to reopen a totally dead case. Well, Your Honor, this was also reopened after nine months of Mr. Bartley trying to convince his 1998 attorney that this should be looked into. And that attorney did nothing about it either. And what do you think Spitzin adds? I'm sorry? What do you think Spitzin adds? I think Spitzin speaks exactly to this case. Spitzin says that the Petitioner's failure in that case to file was totally out of that Petitioner's hands to timely file, and that's exactly what's happened here. And Ms. Mosteller has said this in her declaration. In Spitzin, the Petitioner was told by counsel that he was going to file something, and then the counsel committed malpractice and just didn't get it done after saying, I'm going to file it. And the counsel also wouldn't refute, didn't return the files to the Petitioner before the deadline had run. So there was no way the Petitioner there could have filed anything. Well, I think it's as egregious here, Your Honor, as it was in Spitzin, because Why is that? Why is it that the Petitioner here could not have filed something? Did he not have access to his files? Well, he was sitting in jail, so I'm assuming he didn't, but Ms. Most... But can't he get access to his files when he's in jail? Well, I think that's something, if the Court is interested in that, in the specifics of that, that it calls for an evidentiary hearing. But I thought our normal rule was that there's no right to counsel in these post-conviction proceedings, and there's no, you can't look at lawyer negligence, and it's up to the accused or the convict to get his petition filed. At the point in time that Ms. Mosteller should have acted, and this is what she said in her subsequent declaration, she still was his attorney. She had not withdrawn. And when she found out on June 7th of 1995 that there was no treatment available for her client instead of jail time, then she should have filed a notice of appeal. And so she's negligent, let's say, but under a normal precedence like Fry, we can't do anything about that. Counsel, you'll... But if she said to the incarcerated convict, like, I'm going to file this for you, I've got your files, I'm going to file it, and then she didn't, that would be like Spitzen. But that didn't happen here. Your Honor, I think that... You have a minute to go. I think that it is the obligation of any attorney to follow through on a case. And she had not withdrawn. She acknowledges that. She did not file a notice of appeal. She did not go to Mr. Bartley and tell him that he had a basis for an appeal. In fact, the language on the judgment and sentence that addresses the one-year time limit says that you may be restricted to a one-year time limit. There was nothing that gave Mr. Bartley the indication that he had to do something, particularly knowing that Ms. Mosteller was still his attorney. As far as the other procedural argument, the... Counsel, your time has expired. Thank you, Your Honor. You're free to go outside. May it please the Court, I'm John Sampson, Assistant Attorney General representing the Respondent. The district court in this case correctly denied the petition for three reasons. The first, the court did not reach, but the court may affirm the judgment on the basis of a procedural bar based on State law. The second is that the challenge to the 1995 conviction is barred under both the Federal statute of limitations and under Lackawanna v. Koss. How do you analyze the Frye line of cases and Spitzen? Spitzen does not apply. Spitzen concerned habeas counsel's more than negligence. It was the he misled, according to the Court, and the issue is still open because the State... I want to concede. The State should still be arguing about that. Yes, Your Honor. Except what the Court said in that one. It involved a situation where counsel allegedly misled the petitioner as to counsel's filing a Federal habeas petition and then refused to return the file until the time period for filing it had passed, and the Court found that that was a case that could be entitled to equitable tolling and remanded for further review on whether the petitioner acted with due diligence. That's not the case here. The errors by counsel occurred during the direct appeal. He then procedurally defaulted on his claim by not filing a State collateral challenge in a timely manner. He had noticed that he had one year to do so. It was in the judgment and sentence. He was advised of the one-year time limit. He failed to do so. He then failed to file a Federal habeas petition within the one-year Federal statute of limitations. There's no allegation that counsel on the direct appeal somehow prevented him from filing either a timely collateral challenge in State court or a Federal habeas corpus petition. Spitzen just does not apply under the facts in this case at all. Okay. The claims are procedurally barred. They were never presented fairly to the State Supreme Court. They were presented to the challenge to the 1995 conviction were presented late, and the Court expressly held them time-barred. The challenge to the 1998 conviction under the current claim was never raised in any form. The petitioner raised a claim of ineffective assistance to counsel, but that had to deal with failure to move to several counts in the trial. It had nothing to do with the sentencing and the failure to challenge the prior conviction. Contrary to any argument by Petitioner, we did raise this issue below. We raised it in our answer. Clerk's record 10 at pages 10 to 13. They responded to it in their traverse. The magistrate judge noted our defense in the R&R excerpts record 76, lines 8 through 13, and we raised it again in objections in response to the objections to the R&R. The claims are procedurally barred. That should be the end of this case. The claim, the 1995 claim is also barred under the Federal statute of limitations. It's clear the time period had passed about three years before Petitioner filed his petition in the district court in this case. Under Lackawanna, it does close the door. The Lackawanna court held that once your sentence on a conviction expires and your time for normally challenging that conviction has ended, you cannot challenge that in the course of challenging a future case. Okay. Well, there's not a Gideon issue, as Judge Trott noted. Yes, Your Honor. Isn't there some other language in there about miscarriage of justice, or there's some other precedence that you generally look at that? And if that's true, how do you answer the argument that appellant makes that this reliance on the premise that there would be drug treatment when, in fact, it didn't materialize creates a miscarriage of justice? That, even if there was such reliance, that occurred in 1995. That did not occur during the time period of the time to challenge it in either a state collateral proceeding from 1995 to 1996 or the time period for challenging a or for filing a Federal habeas petition in 1996 to 1997. That does not go to his ability to file either a state or a Federal collateral challenge. The exceptions noted by Justice O'Connor, and they were dicta, they were not adopted I would submit, they were not adopted as actual holding of the court because the court didn't reach when those would actually apply, are when there's showing of actual innocence, which he has not made here. This is an argument about sentencing. Nobody's ever said, I didn't do it. Exactly, Your Honor. Exactly. In fact, he pleaded guilty. He admitted he did it. And then the other is where the State has affirmatively prevented the petitioner from filing it. His mere failure to do so, his mere failure to file a pro se petition either in State or Federal court does not satisfy the exception set out by Justice O'Connor in Lackawanna. Do you have anything else you want to tell us? No, Your Honor. We would ask that you affirm the district court. Thank you. Thank you. We'll give you 30 seconds if you think you need to respond. I'd like to address a couple of the points the Court has raised. Finally, with respect to Lackawanna, the finality of conviction case law says does not deal strictly with miscarriage of justice. What greater miscarriage of justice could there be than to have a man convicted for the rest of his life, sentenced for the rest of his life, based ---- For a crime that he did. I mean, you seem to forget that this is not a case where somebody is saying I'm an innocent person in jail. This is a sentencing squabble. And I think that sets it aside from the kinds of cases that are under consideration in the language that you're talking about in Lackawanna v. Cost. Miscarriages of justice. I would repeat, Your Honor, what greater miscarriage of justice could there possibly be than to have a man convicted for the rest of his life based on an unlawful conviction? Surely the law nor the courts require that to be permissible. Thank you, counsel. The case just argued is order to submit it. Thank you.
judges: Trott, Fisher, Gould